UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Danville Division

| | |
|---|---|
| TANYA J. JUSTUS, ) | |
| Plaintiff, ) | Civil No. 4:14-cv-00045 |
| v. ) | |
| ) | **REPORT & RECOMMENDATION** |
| SOCIAL SECURITY ) | |
| ADMINISTRATION, ) | By: Joel C. Hoppe |
| Defendant. ) | United States Magistrate Judge |

Plaintiff Tanya Justus, proceeding *pro se*, asks this Court to review the Commissioner of Social Security's ("Commissioner") final decision denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–422, 1381–1383f. The case is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 13. Having considered the administrative record, the parties' briefs, and the applicable law, I find that the Commissioner's final decision is supported by substantial evidence and should be affirmed.

I. Standard of Review

The Social Security Act authorizes this Court to review the Commissioner's final decision that a person is not entitled to disability benefits. *See* 42 U.S.C. § 405(g); *Hines v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The Court's role, however, is limited—it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). Instead, the Court asks only whether the Administrative Law Judge ("ALJ") applied the correct legal standards and whether substantial evidence supports the ALJ's factual findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011).

1

"Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" of evidence, *id.*, but not necessarily "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review takes into account the entire record, and not just the evidence cited by the ALJ. *See Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984); *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951). Ultimately, this Court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). However, "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" if he or she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to his or her past relevant work based on his or her residual functional capacity; and, if not (5) whether he or she can perform other work. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983). The claimant

2

bears the burden of proof at steps one through four. *Hancock*, 667 F.3d at 472. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. Procedural History

Justus filed for DIB and SSI on June 9, 2011. *See* Administrative Record ("R.") 149, 153. She was 33 years old, *id.*, and had worked most recently as a certified sprayer for a cabinet maker. R. 243–44. Justus alleged disability beginning May 19, 2011, because of carpal tunnel syndrome ("CTS") in her right arm and hand, depression, and anxiety attacks. R. 177. After the state agency twice denied her applications, R. 71–72, 97–98, Justus appeared *pro se* at a hearing before an ALJ on March 27, 2013, R. 28–29. She testified about her physical and mental symptoms and the limitations they caused in her daily activities. R. 34–40. A vocational expert ("VE") also testified as to Justus's ability to return to her past work or to perform other work existing in the economy. R. 41–45.

The ALJ denied Justus's applications in a written decision dated June 7, 2013. R. 10–20. He found that Justus suffered from severe impairments of CTS and arthralgia,[1] but that these impairments did not meet or equal a listing. R. 14. The ALJ next determined that Justus had the residual functional capacity ("RFC") to perform a range of light work. *Id.* Specifically, he found that she could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; sit and stand or walk for about six hours during an eight-hour workday; occasionally use her upper extremities to push, pull, and handle (gross manipulation) objects; and occasionally engage in postural activities like balancing and stooping. *Id.* Additionally, she must avoid concentrated

---

[1] "Arthralgia" refers to joint pain. Mayo Clinic, *Joint Pain: Definition*, Mar. 21, 2013, http://www.mayoclinic.org/symptoms/joint-pain/basics/definition/sym-20050668. The ALJ also found that Justus's depression and anxiety were non-serve impairments because they did not interfere with her daily activities or social functioning and only minimally affected her concentration, persistence, or pace. R. 13. Justus does not object to this finding on appeal. *See generally* Pl. Br. 1; Pl. Supp'l Br. 1–2.

3

exposure to workplace hazards like heights and machinery. *Id.* The ALJ noted that this RFC ruled out Justus's return to all of her past relevant work, some of which required her to handle objects on a regular basis. R. 18, 43. Finally, relying on the VE's testimony, the ALJ concluded that Justus was not disabled after May 19, 2011, because she could perform other jobs that were present nationally and in Virginia, such as cleaner, supply checker, or cafeteria attendant. R. 19, 43. The Appeals Council declined to review that decision, R. 1, and this appeal followed.

### III. Discussion

Justus's filings present two arguments "why the Commissioner's decision is not supported by substantial evidence or why the decision otherwise should be reversed or the case remanded." W.D. Va. Gen. R. 4(c)(1). First, Justus asserts that the agency "should have sent [her] to a social security doctor to determine [her] eligibility" for benefits. Pl. Br. 1, ECF No. 14; Pl. Supp'l Br. 1–2, ECF No. 17. Second, she asserts that she cannot afford treatment or diagnostic testing for her back pain and CTS, *see* Pl. Supp'l Br. 1, which could arguably undermine the ALJ's findings about Justus's credibility and RFC.

A.  *Consultative Examination*

Justus's objection that the agency "should have sent [her] to a social security doctor" likely refers to the agency's refusal to order a consultative examination. *See* R. 285–86. The Commissioner must purchase a consultative exam "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [the] claim." *Kersey v. Astrue*, 614 F. Supp. 2d 679, 695 (W.D. Va. 2009) (quoting 20 C.F.R. §§ 404.1519a(b), 416.919a(b)). Although the Commissioner has a duty to develop the record, the regulations require only that the "evidence be 'complete' enough to make a determination regarding the nature and severity of the claimed disability, the duration of the disability[,] and the claimant's residual functional

capacity." *Id.* (citing *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986)). Thus, a "reviewing court must defer to the [Commissioner's] decision not to purchase a consultative exam when the record contains sufficient information" to make these findings. *Johnson v. Astrue*, No. 6:11cv9, 2012 WL 2046939, at *3 (W.D. Va. June 5, 2012).

Justus's administrative record contains four treating physicians' notes documenting her conditions and treatment during the relevant period, two state-agency physicians' RFC assessments, and Justus's statements describing her symptoms, daily activities, and functional limitations throughout the relevant period. *See generally* R. 260–67, 270–77, 282, 304–08, 316–18, 324–25, 331–38, 354, 360–62, 374–409 (medical records); R. 53–54, 79–81, (RFC assessments); R. 34–40, 181–82, 195–205, 208, 210–11, 214–15, 220, 246–54 (statements). This evidence, described more fully in Section B, is sufficient to support an informed decision on Justus's disability claim.

B.   *Justus's RFC*

A claimant's RFC is the most she can do on a regular and continuing basis despite her impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a); SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). It is a factual finding "made by the Commissioner based on all the relevant evidence in the [claimant's] record," *Felton-Miller v. Astrue*, 459 F. App'x 226, 230–31 (4th Cir. 2011) (per curiam), and it must reflect the combined limiting effects of impairments that are supported by the medical evidence or the claimant's credible subjective allegations, *see Mascio v. Colvin*, 780 F.3d 632, 638–40 (4th Cir. 2015).

The regulations set out a two-step process for evaluating a claimant's allegation that she is disabled by symptoms, such as pain, caused by a medically determinable impairment. *Fisher v. Barnhart*, 181 F. App'x 359, 363 (4th Cir. 2006) (citing 20 C.F.R. § 404.1529). The ALJ must

5

first determine whether objective medical evidence[2] shows that the claimant has a medically determinable impairment that could reasonably be expected to cause the kind and degree of symptoms alleged. 20 C.F.R. §§ 404.1529(a), 416.929(a); *see also Craig*, 76 F.3d at 594. If the claimant clears this threshold, then the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which they affect her physical or mental ability to work. SSR 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *see also Craig*, 76 F.3d at 595.

The latter analysis often requires the ALJ to determine "the degree to which the [claimant's] statements can be believed and accepted as true." SSR 96-7p, at *2, *4. The ALJ cannot reject the claimant's description of her impairment "solely because the available objective medical evidence does not substantiate" that description. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2); *Hines*, 453 F.3d at 565. Rather, he must consider all the relevant evidence in the record, including the claimant's other statements, her treatment history, any medical-source statements, and the objective medical evidence. 20 C.F.R. §§ 404.1529(c), 416.929(c).

The ALJ must give specific reasons, supported by relevant evidence in the record, for the weight assigned to the claimant's statements. *See Mascio*, 780 F.3d at 639; *Eggleston v. Colvin*, No. 4:12cv43, 2013 WL 5348274, at *4 (W.D. Va. Sept. 23, 2013) (Kiser, J.) (citing SSR 96-7p, at *4). A reviewing court will defer to the ALJ's credibility finding except in those "exceptional" cases where the determination is unclear, unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all. *Bishop v. Comm'r of Soc. Sec.*, 583 F. App'x

---

[2] Objective medical evidence is any "anatomical, physiological, or psychological abnormalities" that can be observed and medically evaluated apart from the claimant's statements and "anatomical, physiological, or psychological phenomena [that] can be shown by the use of medically acceptable diagnostic techniques." 20 C.F.R. §§ 404.1528(b)–(c), 416.928(b)–(c). "Symptoms" are the claimant's description of his or her impairment. *Id.* §§ 404.1528(a), 416.928(a).

6

65, 68 (4th Cir. 2014) (per curiam) (citing *Edelco, Inc. v. NLRB*, 132 F.3d 1007, 1011 (4th Cir. 1997)); *see also Mascio*, 780 F.3d at 640.

    1.    *Relevant Evidence*

Justus's pre-onset medical records document a history of chronic back or joint pain, generalized anxiety disorder, and recurring headaches. *See generally* R. 292–305, 322–23 (May 2009–December 2010). On April 27, 2011, Justus visited her family practitioner, AyoKunle Fatade, D.O., complaining of "constant" moderate aching and throbbing pain in her right arm and hand. R. 324. Dr. Fatade refilled Justus's prescription for Lorcet (hydrocodone with acetaminophen) and instructed her to follow up in six weeks. *See* R. 317, 324, 325. Justus returned to Dr. Fatade's clinic in late August 2011 complaining of "bad headaches" and fatigue. R. 324–25. She did not report any arm or back pain at that time. *Id.* Dr. Fatade refilled Justus's Lorcet and instructed her to return in one month. R. 325.

Justus established care with Mark Mahoney, D.O., on May 19, 2011. R. 276. She reported experiencing pain and numbness in her right arm and hand for the past three months. *Id.* On exam, Dr. Mahoney noted pain on extension of the right wrist, but no muscle atrophy. *Id.* He diagnosed CTS, prescribed Celebrex for pain, and instructed Justus to wear wrist splints at night. *Id.* Justus returned to Dr. Mahoney's office on May 26, 2011. She reported experiencing "extremely severe" pain, numbness, and weakness in her right upper extremity "[e]specially when at work" on the assembly line. R. 274. Dr. Mahoney added Advil or Aleve and Lortab (hydrocodone with acetaminophen) for pain and instructed Justus to follow up in a few days. *Id.*; *see also* R. 317. On June 1, 2011, Justus told Dr. Mahoney that the Lortab was "helping some," but the Celebrex was not. R. 272. Dr. Mahoney gave Justus samples of Arthrotec for pain, but

7

stressed that she needed to have a nerve conduction study on her right arm. *Id.* He noted that she "seem[ed] reluctant to get the test done" even though she had health insurance. *Id.*

Justus underwent bilateral EMG/nerve conduction studies on June 21, 2011. R. 261. The motor nerve conduction studies were normal, but the EMG evinced "mild bilateral median neuropathies at the wrist." *Id.* There was no evidence of cervical radiculopathy or elbow neuropathy on the right side. *Id.* On June 23, 2011, Dr. Mahoney refilled Justus's Lortab and referred her to an orthopedic surgeon. R. 270.

On June 29, 2011, Justus submitted forms relating that she experienced "constant," R. 182, aching, stabbing, burning, throbbing, and cramping pain whenever she used her dominant right arm. R. 195, 203. She said that she could care for her personal needs, drive independently, prepare simple meals, clean her mobile home, wash laundry, mow the grass, and go shopping in stores. Justus reported that the CTS in her right wrist limited her ability to lift, reach, and use her hands. R. 203. She estimated that she could lift 10 pounds, but said that "reaching for something 10 lbs hurts [her] right arm real bad." *Id.*

Justus saw orthopedic surgeon Rodney Mortenson, M.D., on July 13, 2011. R. 282. Dr. Mortenson diagnosed bilateral CTS and injected Justus's right carpal tunnel with cortisone. *Id.* He also noted that Justus was "disabled" until her next visit in three weeks, at which time he would "probably allow her to return to work."[3] *Id.* Justus returned to Dr. Mortenson's clinic on August 9, 2011, complaining that the cortisone injection did not work. R. 336. On exam, Dr. Mortenson observed that Justus had normal strength in both upper extremities, but that her right

---

[3] At her March 2013 hearing, Justus testified that she had been on FMLA leave from her cabinet-manufacturing job "because of the carpal tunnel" since May 2011. R. 39–40. In April 2010, Dr. Fatade signed a FMLA form certifying that Justus needed two weeks' leave to treat an acute gastric ulcer. *See* R. 302–03, 313–14. There are no FMLA forms or similar work-release notes related to carpal tunnel in Justus's administrative record.

wrist and hand were weaker and less receptive to touch than her left upper extremity. *See id.* He recommended surgical decompression with the caveat that it may not completely resolve Justus's carpal tunnel symptoms. *Id.*

Dr. Mortenson performed a carpal tunnel release on Justus's right hand on August 23, 2011. R. 338. One week later, Justus told Dr. Mortenson that she was "doing extremely well" and that her "preoperative wrist pain and numbness in the fingers [was] totally resolved." R. 334. Nonetheless, Dr. Mortenson prescribed Norco (hydrocodone with acetaminophen) as needed for pain. R. 334; *see also* R. 316. He also noted that Justus was "currently disabled," but that they would "reevaluate" that issue on her next visit in three weeks. *Id.* Justus returned to Dr. Mortenson's office twice in September 2011. R. 331–32, 333. She did not report any symptoms on either visit, and there is no indication that Dr. Mortenson examined Justus to determine whether she could resume work. *See id.* Justus did not return to Dr. Mortenson's clinic after September 20, 2011. *See* R. 362–63, 365.

On September 21, 2011, Dr. Fatade "fired" Justus from his practice "for getting pain meds at another doctor." R. 360. Dr. Mahoney also dismissed Justus from his practice on November 3, 2011, for "doctor shopping" and drug-seeking behavior. R. 354 ("She has seen 4 different doctors in the last 2 months for multiple refills on hydrocodone and Xanax."). Justus's records indicate that Drs. Mahoney, Mortenson, and Fatade each wrote multiple prescriptions for hydrocodone with acetaminophen between March 26 and September 10, 2011. R. 316–17.

In November 2011, state-agency medical consultant Robert McGuffin, M.D., reviewed Justus's records available through October 27, 2011. R. 74. Dr. McGuffin opined that Justus could occasionally lift or carry 20 pounds; frequently lift or carry 10 pounds; sit and stand or walk for more than six hours during an eight-hour workday; occasionally use her upper

9

extremities to push, pull, and handle objects; and occasionally climb ladders, ropes, or scaffolds. R. 79–80. Additionally, she must avoid concentrated exposure to workplace hazards like heights and machinery. R. 80–81. Dr. McGuffin attributed most of these restrictions to Justus's bilateral CTS. *See* R. 79–81.

Justus established care with Vincent Jones, M.D., on May 10, 2012, to manage her chronic obstructive pulmonary disease ("COPD"). R. 407. She reported nondescript back and joint pain on twice-daily Lorcet, R. 409, but indicated that the pain was not severe enough to keep her from walking regularly, R. 407. Justus expressly denied pain, numbness, or tingling in her upper extremities. R. 409. A physical examination was normal. *Id.* Dr. Jones instructed Justus to take Lorcet as needed up to four times a day and to return in one month. R. 405, 408.

Justus routinely visited Dr. Jones's clinic to manage her COPD, hypertension, migraines, generalized anxiety disorder, and chronic pain syndrome. R. 374–76, 377–79, 380–82, 383–85, 386–88, 389–91, 392–94, 395–97, 398–400, 401–03, 404–06 (June 2012–April 2013). On most visits, she reported that Lorcet was "enough to make a real difference" in her physical and overall functioning, although she still experienced nondescript joint and back pain.[4] R. 383–84, 386–87, 389–90, 392–93, 395–96, 398–99, 401–02, 404–05; *but see* R. 374–81 (reporting "joint pain and back pain" on three occasions in 2013 without indicating whether her pain and functioning continued to improve with Lorcet). On exams, Dr. Jones consistently noted "tenderness" and "abnormal" range of motion (0 degrees extension) in Justus's lumbar spine. R. 375, 378, 381, 385, 388, 391, 394, 397, 400, 403, 406. He did not adjust Justus's pain

---

[4] On every visit, Justus reported that she still walked regularly and denied experiencing pain, numbness, or tingling in her upper extremities. R. 374–75, 377–78, 380–81, 384, 387, 390, 393, 396, 399, 402, 405.

10

medications, limit her physical activity, or recommend additional tests or treatment.[5] R. 376, 379, 385, 388, 391, 394, 397, 400, 403, 405.

At the administrative hearing on March 27, 2013, Justus testified that she could not work because she "constantly" experiences pain in her whole back and numbness in both hands. R. 34. Justus explained that the numbness did not limit her ability to manipulate small objects, but that it "sometimes" interfered with her ability to write and hold heavy objects. R. 34. Justus estimated that she could lift at most three pounds, sit for one hour, walk for 30 minutes at a time, and could not bend at the waist or knees. R. 35. She did not report specific limitations caring for herself or doing chores, except to say that it "takes [her] a while" to complete such tasks. R. 38–39. Justus testified that she still saw Dr. Jones once a month and that he prescribed Lorcet for pain. R. 37. She confirmed that Lorcet "helped" her pain without causing adverse side effects. R. 34, 37.

   2.    *ALJ's Findings*

The ALJ found that Justus's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Justus's statements describing "the intensity, persistence, and limiting effects of these symptoms [were] credible only to the extent that they [were] consistent with the" ALJ's RFC determination. R. 15. He gave four broad reasons for rejecting Justus's allegations that joint pain and CTS rendered her unable to perform even light work with bilateral manipulative restrictions: "The limited degree of treatment required, relatively benign findings, effectiveness of treatment when followed, and record inconsistencies during the period at issue belie allegations of disabling symptoms and limitations." R. 17. The ALJ also identified specific conflicts between Justus's testimony describing her symptoms and

---

[5] The same treatment notes indicate that Dr. Jones and Justus consistently discussed an "exit strategy" for weaning Justus off Lorcet because of her "elevated risk" for opiate abuse. R. 376, 379, 385, 388, 391, 394, 397, 400, 403, 405.

physical limitations compared to her self-reported daily activities and statements to multiple treating physicians throughout the relevant period. R. 16–17.

The ALJ gave "little weight" to Dr. Mortenson's opinions that Justus was "disabled" because the opinions were "conclusory, provide[d] very little explanation of the evidence relied upon, and . . . inconsistent with other evidence of record," including Dr. Mortenson's contemporaneous treatment notes. R. 17–18. The ALJ also gave "partial weight" to Dr. McGuffin's RFC assessment in so far as it was "consistent with and supported by [the] evidence of record," including treatment notes and diagnostic tests. R. 18.

3. *Analysis*

The ALJ's RFC determination is consistent with the law and supported by substantial evidence in the record. *See Mascio*, 780 F.3d at 636–40. He considered all of the relevant evidence and included a narrative discussion explaining how specific medical facts and nonmedical evidence support each restriction in his RFC finding. *See* R. 12–18; *Mascio*, 780 F.3d at 636. The ALJ also provided a comprehensive list of reasons with supporting cites to specific evidence in the record when he partially credited Justus's complaints of debilitating pain, numbness, and functional limitations.[6] *Cooke v. Colvin*, No. 4:13cv18, 2014 WL 4567473, at *4 (W.D. Va. Sept. 12, 2014) (Kiser, J.) (citing SSR 96-7p, at *4).

---

[6] The ALJ's credibility finding does appear in a legally flawed statement, however:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms; however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are credible only to the extent that they are consistent with the above residual functional capacity assessment, for the reasons explained in this decision.

R. 15. The ALJ's reliance on this vague and circular boilerplate statement was harmless in this case because he properly analyzed Justus's credibility elsewhere in his written decision. *Bishop*, 583 F. App'x at 67; *see Mascio*, 780 F.3d at 639.

12

For example, he correctly identified numerous instances after Justus's August 2011 carpal-tunnel surgery where she expressly denied experiencing pain, numbness, or weakness in either upper extremity. R. 17; *see, e.g.*, R. 334, 375, 378, 381, 384, 387, 390, 393, 396, 399, 402, 405. This inconsistency supports the ALJ's finding that Justus's CTS-related symptoms and limitations were not as severe as she alleged in her March 2013 testimony. *See Bishop*, 583 F. App'x at 67 (finding no error where "the ALJ cited specific contradictory testimony and evidence in analyzing Bishop's credibility and averred that the entire record had been reviewed"); *Sowers v. Colvin*, No. 4:12cv29, 2013 WL 3879682, at *4 (W.D. Va. July 26, 2013) (Kiser, J.) (finding that the claimant's inconsistent statements about his symptoms provided substantial support for ALJ's adverse credibility finding).

Similarly, Justus repeatedly told Dr. Jones that Lorcet helped her back and joint pain "enough to make a real difference" in her physical and overall functioning. R. 383–84, 386–87, 389–90, 392–93, 395–96, 398–99, 401–02, 404–05. Dr. Jones refilled Justus's Lorcet each month without imposing any physical limitations or recommending diagnostic tests or more aggressive treatment. *See id.* Information that a medical professional provides about a claimant's symptoms is an important indicator of the intensity, persistence, and limiting effects of symptoms that can be difficult to quantify, like diffuse joint pain. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Thus, a treating physician's failure to impose "symptom-related functional limitations and restrictions" can weigh against the claimant's credibility. *Id.*; *accord Hicks v. Colvin*, No. 7:12cv618, 2014 WL 670916, at *6 (W.D. Va. Feb. 20, 2014). Further, pain is not disabling if it can be reasonably controlled with medication. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Fisher v. Comm'r of Soc. Sec.*, No. 6:11cv26, 2013 WL 1192576, at

13

*4 (W.D. Va. Mar. 22, 2013). The ALJ reasonably found that Justus's "prescribed medications [had] been relatively effective in controlling" her pain throughout the relevant period.

Justus does not dispute the ALJ's factual findings or point to any evidence in the record that he ignored, overlooked, or misconstrued. *See Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014). She simply disagrees with his choice between conflicting evidence. Pl. Br. 1; Pl. Supp'l Br. 1–2. This Court cannot second-guess that choice where, as here, the ALJ gave specific and legitimate reasons, supported by substantial evidence in the record, for not fully crediting the claimant's testimony about her pain and limitations. *Bishop*, 583 F. App'x at 67.

The ALJ's RFC determination is supported by Dr. McGuffin's nearly identical opinion, R. 79–81, Justus's description of her daily activities and her "sometimes" impaired gross manual dexterity, R. 34, 38–39, 198–203, her statements to three treating physicians, R. 324–25, 334, 383–84, 386–87, 389–90, 392–93, 395–96, 398–99, 401–02, 404–05, her routine and conservative treatment, and her generally unremarkable physical exams—both before and after CTS surgery—throughout the relevant period, R. 261, 316–17, 324, 235, 270, 272, 274, 336, 375, 378, 381, 385, 388, 391, 394, 397, 400, 403, 406.

The ALJ's reliance on the VE's testimony in response to a hypothetical question reflecting that RFC determination, R. 19, 42–43, was also proper. *See Fisher v. Barnhart*, 181 F. App'x 359, 365 (4th Cir. 2006). The VE testified that a person with Justus's vocational profile and RFC could not perform her past work, but could perform certain light occupations, such as cleaner, supply checker, and cafeteria attendant. R. 43. The ALJ adopted these findings. *See* R. 18. Justus does not object to the VE's testimony or to the ALJ's finding that these jobs exist in significant numbers nationally or in Virginia. Accordingly, I find that the Commissioner's final decision is supported by substantial evidence. *Walls v. Barnhart*, 296 F.3d 287, 292 (4th Cir.

2002) (holding that a VE's reliable testimony provides substantial evidence to support the Commissioner's final decision).

### IV. Conclusion

This Court must affirm the Commissioner's final decision that Justus is not disabled if that decision is consistent with the law and supported by substantial evidence in the record. The Commissioner has met both requirements. Accordingly, I recommend that the Court **GRANT** the Commissioner's motion for summary judgment, ECF No. 18, and **DISMISS** this case from the docket.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Jackson L. Kiser, Senior United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTER: August 31, 2015

Joel C. Hoppe
United States Magistrate Judge